UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

STEPHEN R. CORNELL,

    Plaintiff,

v.

BP AMERICA, INC.,

    Defendant.

## COMPLAINT AT LAW

Plaintiff, Stephen R. Cornell ("Cornell"), by and through his attorneys, Caffarelli & Siegel Ltd., complains against BP America, Inc. ("BP" or "Company"), as follows:

### NATURE OF ACTION

1. This lawsuit arises under the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. 115/1 *et seq*. ("IWPCA"), for BP's failure to pay Cornell his final compensation.

### JURISDICTION AND VENUE

2. This court has jurisdiction of this action under 28 U.S.C. § 1332.

3. Venue is proper in this judicial district as the facts and events giving rise to Cornell's claims occurred in this judicial district. Accordingly, venue in the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391(b).

### PARTIES

4. Cornell worked for BP between on or about January 1, 2008 and on or about January 31, 2014. At the time his employment with BP ended, Cornell's job title was Chief Operating Officer of BP's U.S. Fuels business ("COO").

5. Throughout his employment, Cornell's office was located at, and he primarily worked from, BP's Naperville, Illinois facility.

6. Cornell is a citizen of the State of Illinois.

7. At all relevant times, Cornell was an "employee" of BP as defined by the IWPCA.

8. BP is a corporation doing business in the oil industry, with its principal place of business located in Houston, Texas.

9. At all relevant times, BP was an "employer" of Cornell as defined by the IWPCA.

## FACTUAL ALLEGATIONS

10. Throughout his employment with BP, Cornell's performance met or exceeded the Company's expectations.

11. Cornell was heavily recruited by BP, and hired in January 2008, after the Company had experienced a major tragedy at its Texas City refinery that resulted in fifteen people being killed.

12. Cornell was hired by BP as the Refining Vice President with the goal of bringing the operating environment of five refineries to a level equal to or better than that found in the U.S. oil industry – with a particular emphasis on improving process safety.

13. In 2011, Cornell was promoted to COO. As COO, Cornell led the re-positioning of the U.S. business through the divestment of the Texas City and Carson refineries, and the logistics and marketing of each. Additionally, Cornell retained the responsibilities he had as the Refining Vice President.

14. In 2012, BP's U.S. refineries reached record high levels of operational availability and record low levels of process safety concerns. BP's U.S. Fuels business also achieved record level of profitability in 2012.

15. In 2013, the Company's U.S. refineries continued to make further progress in the areas of availability, efficiency and safety.

16. In 2013, BP successfully closed the sales of both the Texas City and Carson refineries for a combined amount of nearly $5 billion.

17. According to Iain Conn (BP's Chief Executive, Refining & Marketing), "throughout his time with the Company, [Cornell was] instrumental in driving the significant improvements in safe, compliant, and reliable operations across BP's refineries and notably in the U.S. . . . Under [Cornell's] leadership the U.S. Fuels business [was] changed significantly and [was] repositioned in a way that should enable it to deliver sustainable performance into the future. Moreover, [Cornell was] a trusted and valued member of my Segment Executive Team."

18. Cornell's annual base salary was $575,000 at the time his employment ended.

19. Cornell was a Band B Group Leader at the time his employment with BP ended.

20. In 2011, BP awarded Cornell options under the Company's Recovery Plan.

21. In 2012 and 2013, the Company granted Cornell shares pursuant to its Share Value Plan ("SVP").

22. The Company's policies state that an executive that retires or voluntarily resigns may retain unvested grants.

23. According to Cornell's offer letter, which he received from the Company at the outset of his employment, he was eligible for "BP's standard separation package" for U.S. executives.

24. In e-mails and other correspondence with Cornell regarding departing executives in his group, Conn, Helmut Shuster (BP's Executive Vice President, Group Human Resources Director), and other BP executives, repeatedly referred to the Company's "standard package."

25. Per the Company's policies, correspondence, and actions, BP's agreed upon standard separation package consists of at least a lump sum severance payment per the Company's standard formula, retention of all restricted stock including SVP, and a pro-rated retention of options.

26. According to Sally Bott's (the Company's Group HR Director) e-mail dated June 9, 2009, U.S. Group Leaders at Band C and above (which would include those at Band B) shall receive two times base pay in severance. Moreover, given its competitive nature, BP did not expect variations to the formula.

27. It is BP's standard practice and policy to provide the agreed upon standard separation package to departing executives unless they are terminated for cause. Stated otherwise, executives receive the agreed upon standard separation package if they are involuntarily terminated, resign, or retire.

28. Keith Casey received BP's agreed upon standard separation package at the time he voluntarily left his employment with the Company.

29. Chuck Wardlaw received BP's agreed upon standard separation package at the time he voluntarily left his employment with the Company.

30. Jeff Pitzer received BP's agreed upon standard separation package at the time he voluntarily left his employment with the Company.

31. John Barajas received BP's agreed upon standard separation package at the time he voluntarily left his employment with the Company.

32. Mike Elgin received BP's agreed upon standard separation package at the time he voluntarily left his employment with the Company.

33. Steve Pankhurst received BP's agreed upon standard separation package at the time he voluntarily left his employment with the Company.

34. Uduak Udofia received BP's agreed upon standard separation package at the time he voluntarily left his employment with the Company.

35. Cynthia J. Warner received BP's agreed upon standard separation package at the time she voluntarily left her employment with the Company.

36. Cornell's employment with BP was not terminated for cause.

## COUNT I – ILLINOIS WAGE PAYMENT AND COLLECTION ACT

37. Plaintiff incorporates paragraphs 1-36 as though fully restated herein.

38. Under the IWPCA, employers must pay separated employees all final compensation no later than the next regularly scheduled payday for all employees. 820 Ill. Comp. Stat. 115/5.

39. Under the IWPCA, final compensation includes severance or separation pay owed to an employee pursuant to an existing contract or agreement.

40. BP's policies, practices, statements, and actions constitute an agreement under the IWPCA to pay departing U.S. executives, including Cornell, the Company's standard separation package.

41. BP failed to pay Cornell the agreed upon standard separation package.

42. The current value of Cornell's standard separation package (i.e. the lump sum severance payment, plus the unpaid options and SVP grants) exceeds $3 million.

43. BP violated the IWPCA by failing to pay Cornell his final compensation – the agreed upon standard separation package.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in favor of Plaintiff and against Defendant, including:

A. Awarding judgment against Defendant in an amount in excess of $3 million for all unpaid final compensation due for violations of the IWPCA;

B. Awarding prejudgment interest in accordance with 815 Ill. Comp. Stat. 205/2;

C. Awarding statutory damages pursuant to the formula set forth in 820 Ill. Comp. Stat. 115/14(a);

D. Awarding reasonable attorneys' fees and costs incurred in filing this action; and

E. Such other and further relief as this Court deems just under the circumstances.

Dated: March 26, 2014                              Respectfully submitted,

Marc J. Siegel, #06238100                          STEPHEN R. CORNELL
Bradley Manewith, #06280535
Caffarelli & Siegel Ltd.
Two Prudential Plaza                               By: /s/ Marc J. Siegel
180 North Stetson Ste. 3150                            Attorney for Plaintiff
Chicago, IL 60601
Tel. (312) 540-1230
Fax (312) 540-1231